UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                     :

BRUCE HAY,                              :

                                :

                Plaintiff,          :     23 Civ. 08584 (JPO)

                                :

               -against-          :

                                :

KERA BOLONIK,                     :

                                :

               Defendant.     :

                                :

-------------------------------------------------------------------- X

**DEFENDANT KERA BOLONIK'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS THE COMPLAINT AND FOR AN ORDER PURSUANT TO 28 U.S.C. § 1651 ENJOINING PLAINTIFF**

Poler Legal LLC
15 MetroTech Center, 7th Floor
Brooklyn, NY 11201
(212) 675-9060

*Counsel for Defendant Kera Bolonik*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................. ii

**PRELIMINARY STATEMENT** ............................................................1

**RELEVANT FACTS**.............................................................................2

    **The Allegations in the Current Complaint**.............................................. 2

    *Hay v. New York Media LLC and Kera Bolonik,* **20 Civ. 6135 (JPO)**..............................5

    *Hay v. The Gernert Co., Inc.,* **No. 22 Civ. 698 (LGS)** ........................................7

    **Counsel Requests Hay Withdraw the Complaint** ............................................10

**ARGUMENT**....................................................................................10

**I.   PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA** ...................................10

    *A.   The Present Action is Barred by the Court's Decision in the NY Media Action* ........11

    *B.   The Present Action is Barred by the Court's Decision in the Gernert Action* .............13

**II.   HAY HAS FAILED TO ADEQUATELY PLEAD HIS CLAIMS FOR BREACH OF CONTRACT** ...............................................................................14

    *A.   Hay Has Failed to Allege the Existence of a Contract* .................................15

    *B.   Hay Has Not Satisfied the Statute of Frauds* .........................................15

    *C.   The "Contract" Alleged in the Complaint is Too Vague to be Enforced*...................16

**III.   THE COURT SHOULD ENJOIN HAY FROM FILING ADDITIONAL LITIGATION** ...............................................................................17

**CONCLUSION** ................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 14, 15, 16

*Baker v. City of New York*, 2005 WL 1018193, 05 Civ. 664 (S.D.N.Y. Mar. 9, 2005)................19

*Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578 (2d Cir. 1987).................17

*Blue Tree Hotels Investment (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
369 F.3d 212 (2d Cir. 2004) ........................................................................................11

*D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 457-58, 483 N.Y.S.2d 164
(1984) ...........................................................................................................................16

*Day v. Moscow*, 955 F.2d 807 (2d Cir. 1992). .............................................................................11

*EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394 (2d Cir. 1997)..............................................11, 14

*Hay v. New York Media LLC and Kera Bolonik,* 20 Civ. 6135 (JPO)..........................................5

*Hay v. The Gernert Co., Inc.*, No. 22 Civ. 698 (LGS) .................................................................7

*Lipin v. National Union Fire Ins. Co. of Pittsburgh, PA*, 202 F. Supp. 2d 126
(S.D.N.Y. 2002)............................................................................................................19

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002)..................................................11

*Mercado v. Kiszka*, 2002 WL 3903651, 21 Civ. 2121 (S.D.N.Y. Aug. 30, 2020) .......................11

*Monsour v. New York State Office for People with Developmental Disabilities*, 2014 WL
12891206, 12 Civ. 336 (S.D.N.Y March 12, 2014) ..............................................16

*N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84 (2d Cir. 2000)................................12, 14

*Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362 (2d Cir. 2003) ........................................15

*Overview Books, LLC v. United States*, 438 Fed. Appx. 31 (2d Cir. 2011)................................12

*Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001) ..............................................................................11

*Rexrnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir. 1994) ...........................................15

**Cases**

*Safir v. U.S. Lines, Inc.,* 792 F.2d 19 (2d Cir. 1986) .............................................................18, 19

*Starke v. SquareTrade, Inc.*, 913 F.3d 279 (2d Cir. 2019) ..........................................................15

*Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000)................................................12, 13

*Yaba v. Roosevelt*, 961 F. Supp. 611 (S.D.N.Y. 1997) ................................................................12

**Statutes**

28 U.S.C. § 1651.................................................................................................................1, 18

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1, 10, 12,14

N.Y. Gen. Oblig. Law § 5-701(a) (2024).....................................................................................16

N.Y. Gen. Oblig. Law § 5-701(a)(1) (2024) ...............................................................................16

Defendant Kera Bolonik ("Bolonik"), by her attorneys, Poler Legal LLC, submits this memorandum of law in support of her motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and her motion for an order pursuant to 28 U.S.C. § 1651 permanently enjoining Plaintiff Bruce Hay ("Hay") from commencing any additional actions or proceedings based on or connected to the facts alleged this case, or any of the complaints, proposed amended complaints or other documents he has previously filed in certain other cases he has filed, which are discussed in more detail below, without first obtaining leave of this Court, except to submit papers responding to submissions by a defendant or, when appropriate, to seek appellate review.

## PRELIMINARY STATEMENT

Hay is a serial litigant who, having had his prior two cases dismissed, now seeks a third bite at the apple.

Given this history, not surprisingly, Hay's claims in the Complaint are barred by res judicata.  The prior actions involved the same parties – Hay and Bolonik – as this case and the prior actions were resolved on the merits.  Moreover, the claims in this action were either raised in Hay's prior cases or are based on facts known to Hay at the time he filed the various complaints, proposed amended complaints and other documents in the prior actions.  As a result, res judicata, which prevents parties from relitigating matters that they could have or did raise in prior actions, requires the Court dismiss the Complaint.

The current action must also be dismissed because the Complaint fails to allege the existence of an enforceable agreement.  There are three reasons for this.  First, the Complaint, on its face, alleges that there was no meeting of the minds because Bolonik never intended to be bound by the parties' supposed agreement.  Second, the Complaint fails to allege the existence of an enforceable agreement because it lacks any non-conclusory allegations of a writing satisfying

the statute of frauds.  And third, the alleged contract is so vague and indefinite that there is no

way for the parties (or this Court) to determine if it was breached.  As a result, Hay has failed to

allege a contract – a prerequisite for his breach of contract claims.

In addition, given Hay's history of advancing the same, non-meritorious claims, the

Court should enjoin Hay from commencing additional actions or proceedings without Court

approval.  This remedy is more than appropriate and is necessary to protect Bolonik from the

burden of duplicative litigation.

## RELEVANT FACTS

The following facts are drawn from the complaint in this action (the "Complaint" or

"Cmplt."),[1] as well as documents Hay has previously filed in actions against Bolonik and others.

### The Allegations in the Current Complaint

Bolonik is a freelance writer.  (Ex. A ¶ 5.)  He was, at one time, a professor at Harvard

Law School.  (*Id.* ¶ 6.)

Hay brings the present action pro se.  (*Id.* at 22.)

The Complaint asserts two causes of action for breach of contract.  (*Id.* ¶¶ 65-76.)  These

claims both spring from Hay and Bolonik's interactions, which began in 2018 when Hay

contacted Bolonik about his complicated and turbulent relationship with Maria-Pia Shuman and

Mischa Shuman (collectively, the "Shumans").  (*Id.* ¶ 15.)[2]

These communications eventually led to Bolonik publishing two articles in *New York*

Magazine.  (*Id.*)  The first, titled "The Most Gullible Man in Cambridge," appeared in July 2019,

---

[1]     A copy of the Complaint is attached as Exhibit A to the accompanying Declaration of Emily A. Poler dated February 16, 2024 ("Poler Declaration" or "Poler Decl.").  Citations to "Ex. __" refer to exhibits to the Poler Declaration.

[2]     The Complaint contains two paragraphs numbered 15. This citation refers to the second paragraph 15.

and the second, titled "The Harvard Professor Scam Gets Even Weirder," appeared in August 2019.

As discussed in more detail in the next section, Hay previously sued Bolonik and New York Media LLC ("New York Media"), the company that owns *New York* Magazine, claiming (among other things) that they breached a July 2018 agreement governing the researching, writing, and publication of Bolonik's articles. This Court dismissed that action and denied Hay's request to file another amended complaint finding the proposed amendment.

By the present action, Hay now claims the existence and breach of a second agreement governing a book and other projects that grew out of Bolonik's articles. (*Id.* ¶¶ 6-8, 20, 23, 65-76.) Specifically, he claims that, in addition to the 2018 agreement, in early 2019, while Bolonik was researching and writing the articles for *New York* Magazine, he and Bolonik entered into another agreement. According to the Complaint, this later agreement provided:

> (1) [T]he parties would co-author a book on [Hay's] experiences with the Shumans and the surrounding circumstances of their lives known to [Hay]; (2) neither party would write their own book on the subject, and neither would seek out another co-author, without first getting the other's permission; (3) work would begin on the book as soon as [Bolonik's] articles were finished, although some portions of the articles might (or might not) make it into the book; (4) the book would be a serious work of investigative journalism . . . (5) the finished product would have to be satisfactory to both of them before final publication; (6) . . . they would share equally the duties of evidence gathering, with [Hay] primarily responsible for collecting documents and [Bolonik] primarily responsible for interviewing sources; (7) . . . they would share equally the duties of writing the manuscript; (8) . . . they would share equally all proceeds from the book and from any movie or television representation of the story; [and] (9) if a movie or TV deal materialized, [Hay and Bolonik] would insist to its creators that the production was based on fact, did not fabricate stories, and did not contain invidious stereotypes.

(*Id.* ¶ 23.)

According to the Complaint, Bolonik breached this later agreement in September 2019 by entering into a contract with HarperCollins Publishers LLC ("HarperCollins") to

3

publish, as sole author, a book about [Hay's] life."  (*Id.* ¶ 11; *see also id.* ¶¶ 70-71.)  It further claims that Bolonik breached this agreement with respect to a potential movie or television deal by denying Hay the opportunity write the first book about the Shumans and by contacting United Talent Agency, which was soliciting interest in a movie or TV deal based on Bolonik's book, with a narrative based on "unhinged theories of the Shumans . . ." that did not comport with the parties' supposed agreement to ensure that that any movie or television series was factual. (*Id.* ¶ 57.)

Three additional pieces of information about the current Complaint are relevant to the present motion.  First, while it seeks to assert claims for breach of contract, it plainly states that the parties never agreed on the terms of this supposed agreement:  "[Bolonik] had never intended to comply with her agreement with [Hay,] had never intended to take him on as a co-author, or give him any input into the manuscript, or to share any of the money that the book earned. . . ." (*Id.* ¶ 33; *see also* ¶¶ 34, 36, 72.)

Second, while it alleges that the parties' agreement was memorialized "[i]n a series of phone calls and exchanges of correspondence . . ." (*id.* ¶ 23), it does not quote, attach or provide any non-conclusory details concerning this "correspondence," or allege that Bolonik subscribed to these materials as required by the statute of frauds. (*See, generally* Ex. A.)

Third, the parties' agreement supposedly required, *inter alia*, that "the book would be a serious work of investigative journalism . . ." (*id.* ¶ 23), that the parties would insist that the creators of a movie or TV show "did not fabricate stories, and [that the movie or TV show] did not contain invidious stereotypes" (*id.*), and that they would "seek all sides of a story, . . . separate truth from falsehood, . . . make scrupulous use of evidence, . . . avoid inappropriate

entanglements with sources, and . . .  maintain a professional distance from the people and subjects . . ." of any book.  (*Id*. ¶ 20.)  However, the Complaint is silent as to how the parties (or anyone else) would evaluate compliance with these nebulous terms.  (*See*, *generally* Ex. A.)

### ***Hay v. New York Media LLC and Kera Bolonik*, 20 Civ. 6135 (JPO)**

As noted above, Hay previously sued Bolonik and New York Media in an action captioned *Hay v. New York Media LLC*, No. 20 Civ. 6135 (S.D.N.Y.) (the "NY Media LLC Action").

According to the First Amended Complaint in the NY Media Action, which Hay brought pro se, in a July 6, 2018 phone call Hay, Bolonik and New York Media LLC agreed that, in exchange for Hay working exclusively with Bolonik and New York Media LLC

> (1) . . . the investigation and reporting of the story by [Bolonik and *New York* Magazine] would be professional, in that [Bolonik] would bring to bear her experience and the long experience of her editors and colleagues at *New York* Magazine in investigative reporting to ensure that the story was up to the customary ethical standards of long-form investigative journalism; (2) . . . [Bolonik's] investigation and reporting of the story would be thorough, in that [Bolonik and *New York* Magazine] would diligently investigate and review the evidence carefully to ensure that the story was accurate and presented in a fair and impartial light[;] (3) . . . the investigation and reporting of the story by [Bolonik and *New York* Magazine] would be sensitive to the delicate gender issues raised by the story that [Hay] and Bolonik had discussed at length, given the negative social and political climate toward transgender people, because though [Hay] was very upset and angry with the Shumans – he wanted Bolonik to avoid misogynist and transphobic tropes harming women and transgender people generally[;] and (4) . . . as a source who was opening up about a painful episode in his private life, [Hay] would be treated with the utmost professionalism and respect by Bolonik and *New York* Magazine.

(Ex. B ¶ 76; *see also id*. ¶¶ 75, 163-64.)  The First Amended Complaint in the NY Media Action further alleged that:

- Hay "helped Bolonik explore movie and TV deals based on [her articles]; and helped Bolonik begin work on her book based on . . ." Bolonik's *New York* Magazine articles (*id.* ¶ 82);

- In reliance on "these promises and expectations, [Hay] gave up the chance to have the story investigated and reported by journalists at other publications" and turned away inquiries from other reporters and news outlets (*id*. ¶ 83);

- As of August 2019, Hay was aware that Bolonik "was arranging for United Talent Agency in Los Angeles to solicit bids for a possible movie or TV series based on the articles" (*id*. ¶ 126); and

- "In September 2019, Bolonik informed [Hay] that the Harper Collins [sic] publishing house had agreed to publish her proposed book, which was to be entitled *Gullible*.  She persuaded [Hay] to continue working with her, and not to work with any other journalists as she completed the book." (*Id*. ¶ 127.)

On January 8, 2021, with the assistance of counsel, Hay sought leave to file a Second Amended Complaint in the NY Media Action.  The Proposed Second Amended Complaint again showed that, as of January 2021, Hay was aware Bolonik had entered into a book deal with HarperCollins that did not include him and that Bolonik was exploring movie and TV deals based on her articles.  (*Id*. ¶¶ 81 ("Following the publication of the resulting article[s] in the summer of 2019, [Hay] helped Bolonik and New York Media promote the article[s] . . .; helped Bolonik explore movie and TV deals based on the article[s]; and helped Bolonik begin work on her book based on the article[s]"); 141 ("In September 2019, Bolonik informed [Hay] that Harper Collins [sic] publishing house had agreed to publish her proposed book . . . ."); 140 ("In August 2019, Bolonik informed [Hay] that she was arranging for United Talent Agency in Los Angeles to solicit bids for a possible movie or TV series based on the articles").)

Despite this awareness, the Proposed Second Amended Complaint in the New York Media Action did **not** allege the existence of the 2019 agreement Hay asserts in the current

Complaint.  Nor did it contend that Bolonik breached that alleged agreement by entering into a book deal with HarperCollins or denying Hay the opportunity to write the first book about the Shumans even though this information was all plainly available to Hay at the time he sought leave to file it. (*See*, *generally*, Ex. C.)

Defendants in the NY Media Action – New York Media and Bolonik – moved to dismiss the First Amended Complaint and opposed Hay's motion to file a Second Amended Complaint. On July 1, 2021, this Court denied Hay's request to file the Proposed Second Complaint finding that it failed to state a claim and, therefore, was futile.  A copy of the Court's order dated July 1, 2021 (the "July 1 Order") is attached as Exhibit D to the Poler Declaration.  By the July 1 Order, the Court also dismissed the First Amended Complaint finding that it contained the same defects as the Proposed Second Amended Complaint. (Ex. D at 1, 7.)

The Second Circuit subsequently affirmed this ruling.  (Ex. E.)

### *Hay v. The Gernert Co., Inc.*, No. 22 Civ. 698 (LGS)

Approximately six months after this Court dismissed the New York Media Action Hay sued Bolonik's literary agent and one of its principals.  Hay commenced that action – *Hay v. The Gernert Co., Inc.*, No. 22 Civ. 698 (LGS) (the "Gernert Action") – in January 2022.  In June 2022, with the assistance of counsel, Hay filed a First Amended Complaint, and in May 2023, again appearing pro se, Hay filed a Second Amended Complaint, a copy of which is attached as Exhibit F to the Poler Declaration.

In the Second Amended Complaint, Hay alleged, among other things:

- "In the Spring and early Summer of 2019, Ms. Bolonik proposed to [Hay] that they write a book together, and be credited as coauthors, or, in the alternative, that she would write the book herself, based on [Hay's] writings regarding the events of his life, materials he

supplied regarding the events of his life, and his interpretations of the events" (Ex. F ¶ 50);

- In early September 2019, Ms. Bolonik informed [Hay] that she had entered into a contract with HarperCollins, under which she (as sole author) would expand the article[s] into a book . . ." (*id.* ¶ 59);

- "In early 2020, Bolonik disclosed to [Hay] she was paid a large advance by HarperCollins, which Bolonik claimed they promised to publish upon delivery of the manuscript.  She told him she was conducting interviews for her book and was traveling for those interviews and the travel was covered by her book advance" (*id.* ¶ 68);

- "In 2020, Bolonik stated in a press interview that she had signed a book deal" (*id.* ¶ 69);

- "In mid-2020, [Hay] confronted Bolonik about the accuracy of her work so far – notably her demonization of the Shumans and her portrayal of his relationship with them . . . (*id.* ¶ 70);

- "In the years since signing her book deal with HarperCollins, Bolonik has maintained on her public profiles her book is forthcoming from HarperCollins/Dey Street and there has been no information or announcement leading anyone to believe otherwise" (*id.* ¶ 73); and

- "[Hay] shared all material and information with Bolonik under the guise of a joint deal, rendering his book essentially obsolete since the content of [Hay's] book would no longer be exclusive." (*Id.* ¶ 76.)

Despite these allegations, the Second Amended Complaint did not name Bolonik as a defendant, allege the existence of the 2019 contract that forms the basis of the current action, or allege

Bolonik breached it by, among other things, entering into an agreement with HarperCollins without him or improperly portraying the Shumans.  (*See*, *generally,* Ex. F.)

Rather, the claims Hay seeks to assert in the current action first showed up in June 2023 when Hay tried to add Bolonik as a defendant in the Gernert Action.  Specifically, by a letter dated June 23, 2023, Hay sought leave to file a Third Amended Complaint claiming he needed to again amend the complaint to "make explicit what was previously left implicit – namely, that [his] agreement with Bolonik was an enforceable contract, which she breached by secretly cutting him out of the book deal and keeping all the proceeds to herself."  (Ex. G at 1.)

Hay reiterated this request in a letter to the Court dated July 7, 2023.  In that letter, Hay stated that he wanted to again amend his complaint to add a claim against Bolonik over "her breach of a contract (formed in May 2019) in which she promised in writing to work with [Hay] on a book adhering to first-rate journalistic standards and to share the profits with him."  (Ex. H at 1; *see also id*. ("The present claim against Bolonik involves the much simpler issue of the enforceability of their May 2019 agreement to work on a book together; whether she breached the agreement; and what the resulting damages are").)  Hay argued he had not previously included this claim because, until June 2023, he had been unsure of whether Bolonik's deal with HarperCollins deal was still in effect.  (*Id*. at 1 ("[Hay] initially refrained from suing Bolonik in this matter because he did not want to do so without clear knowledge, beyond her assertions on social media and claims to people she has been contacting, that her contract with HarperCollins for this book project still exists"; *but see* Ex. F ¶¶ 59, 69, 73 (contradicting this claim).)

In other words, Hay sought to file a Third Amended Complaint to add the very claims he seeks to assert in the current action.  (*Compare* Ex. A ¶¶ 23, 67, 70 *with* Exs. G-H.)

By an order dated July 21, 2023, a copy of which is attached as Exhibit I to the Poler

Declaration, the Court denied Hay's request to file a Third Amended Complaint in the Gernert

Action finding Hay's contention that his proposed claim against Bolonik was not barred by res

judicata because he did not have certain facts available to him earlier to be "unpersuasive."  (Ex.

I.)

## Counsel Requests Hay Withdraw the Complaint

Prior to making this motion, counsel for Bolonik emailed Hay to request that he withdraw

the Complaint as it was barred by, *inter alia*, res judicata and the statute of frauds.  (Ex. J.)  In

this email, counsel advised Hay that, if he did not withdraw his Complaint, "we may seek

sanctions against you . . ." and "an order barring you from filing litigation without leave of the

court."  (*Id.*)

Hay refused to withdraw the Complaint claiming "[i]t is neither 'meritless', [sic] nor

sanctionable." (Ex. K.)

**ARGUMENT**

**I.    PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA**

Whether claims are precluded by res judicata may be decided on a motion pursuant to

Fed. R. Civ. P. 12(b)(6) where "it is clear from the face of the complaint, and matters of which

the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."[3]

*Mercado v. Kiszka*, 2002 WL 3903651, 21 Civ. 2121, at *2 (S.D.N.Y. Aug. 30, 2020) (citation

omitted).  To establish "a claim is precluded under [res judicata] 'a party must show that (1) the

previous action involved an adjudication on the merits; (2) the previous action involved the

---

[3]      In deciding a motion to dismiss on res judicata grounds, the Court may look to public records including
other complaints.  *See Blue Tree Hotels Investment (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
369 F.3d 212, 217 (2d Cir. 2004); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).

[parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or **could have** been raised in the prior action.'" *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (emphasis added); *see also EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 397 (2d Cir. 1997) ("[A] prior decision dismissed 'on the merits' is binding in all subsequent litigation between the same parties on claims arising out of the same facts, even if based upon different legal theories or seeking different relief on issues which **were or might have been litigated in the prior action but were not**") (emphasis added).  Thus, in addition to barring a party from refiling the same claims it previously asserted, res judicata bars a party from asserting claims based on the same series of events that could have been, but were not, advanced in an earlier action.  *See id*.

This and other related doctrines "operate[ ] to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

> **A.** **The Present Action is Barred by the Court's Decision in the NY Media Action**

The first two requirements for the application of res judicata are easily satisfied here. Hay and Bolonik, the parties to this action, were both parties to the NY Media Action. (*Compare* Ex. A *with* Exs. B-C.)  Moreover, the NY Media Action was resolved on the merits when the Court denied Hay's motion to file a Second Amended Complaint and dismissed the First Amended Complaint. (Ex. D at 1, 7); s*ee Overview Books, LLC v. United States*, 438 Fed. Appx. 31, 33 (2d Cir. 2011) (holding prior dismissal pursuant to Fed. R. Civ. P. 12(b)(6) "constituted an adjudication on the merits"); *N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000) (holding additional claims against the same defendant are barred by a

court's denial of a motion to amend because of the "requirement that the plaintiff must bring all claims at once against the same defendant relating to the same transaction or event"); *Yaba v. Roosevelt*, 961 F. Supp. 611, 621 (S.D.N.Y. 1997) ("The denial of a motion to amend is a final judgment on the merits for the purposes of res judicata").

Thus, the only issue is whether Hay's claims in the current action could or should have been brought in the NY Media Action.  In deciding whether the claims in this action could or should have been brought in the NY Media Action, the Court must look at "whether [the] two actions spring from the same 'transaction' or 'claim'. . . ." *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (citation omitted).  To do this, the Court must consider "whether the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations. . . .'" *Id.* (citation omitted).  This is the case here.

The contract Hay alleged in the NY Media Action and the contract he alleges in the current action both spring from Hay's communications with Bolonik while she was researching and writing the articles.  They both concern an alleged agreement pursuant to which Hay purportedly agreed not to work with others, and the standards supposedly applicable to Bolonik's output.  (*Compare* Ex. A ¶¶ 23, 67 *with* Ex. B ¶ 76.)  Moreover, were these cases tried, they would require the same witnesses – Hay and Bolonik.  As such, they are highly related.

Indeed the only difference seems to be that the NY Media Action focused on an alleged 2018 promise related to Bolonik's articles, while the current Complaint focuses on an alleged 2019 promise related to a book based on these articles.  (*Id.*)  It defies logic to claim that these two alleged contracts involving the same people are so unrelated that they are not part of the

same event or series of events.  *See Waldman*, 207 F.3d at 111 (finding res judicata barred a later action based on overlapping facts).

Moreover, even if the two contracts are not sufficiently related, all of the facts relevant to this action were plainly known to Hay at the time he filed the First Amended Complaint and the Proposed Second Amended Complaint in the NY Media Action.  (Ex. B ¶¶ 82, 126-27; Ex. C ¶¶ 812, 139-140.)  This is more than enough for the Complaint to be barred by res judicata.  *See Waldman*, 207 F.3d at 110-11 ("[O]ur cases consistently hold that the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit.  It is instead enough that 'the facts *essential to the second were* [already] present in the first.'" (citation omitted; alterations and emphasis in original).)

As a result, the Court should dismiss the Complaint.

### B.  The Present Action is Barred by the Court's Decision in the Gernert Action

The Gernert Court's denial of Hay's request to file a Third Amended Complaint also bars the Complaint in this action.  The parties to the claim Hay sought to add by filing a Third Amended Complaint – Hay and Bolonik – are identical to the parties to this action.  (*Compare* Ex. A *with* Exs. G-H.)  Moreover, the Court in the Gernert Action rejected Hay's proposed amendment that would have added a claim against Bolonik for breach of an alleged 2019 agreement finding his argument that res judicata did not apply because he did not have certain facts available to him earlier to be "unpersuasive."  (Ex. I.)  For purposes of res judicata, this is a decision on the merits.  *See N. Assur. Co. of Am.*, 201 F.3d at 87-88.

The third factor of the res judicata analysis is also satisfied.  The Gernert Court rejected Hay's request to file a Third Amended Complaint alleging exactly what the Complaint urges – the existence and breach of a 2019 agreement which Bolonik "breached by secretly cutting him

out of the book deal and keeping all of the proceeds to herself." (Ex. G at 1; Ex. H at 1 (seeking to add a claim against Bolonik concerning "her breach of a contract (formed in May 2019) in which she promised in writing to work with [Hay] on a book adhering to first-rate journalistic standards and to share profits with him").) This is identical to the Complaint's first cause of action. (Ex. A ¶¶ 23, 65-74.)

Hay's claims in this action are also precluded because by the time of the Gernert Action, he was plainly aware of the facts underlying this action including Bolonik's deal with HarperCollins (Ex. F ¶¶ 59, 68-69), her supposed "demonization of the Shumans and her portrayal of his relationship with them. . . ." (*Id*. ¶ 70.) This awareness requires the application of res judicata to bar Hay's current complaint. *See EFCO Corp.*, 124 F.3d at 399-400.

## II.   HAY HAS FAILED TO ADEQUATELY PLEAD HIS CLAIMS FOR BREACH OF CONTRACT

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must do more than merely offer "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action. . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (*Id*. citation omitted; alteration supplied). Rather, a complaint must "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Id*. (citation omitted). This requires a plaintiff to "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citation omitted)

Here, this means that, to survive a motion to dismiss, the Complaint must allege in non-conclusory terms, the existence of a contract, that he performed his obligations under that

14

contract, that Bolonik breached the alleged contract, and that he was damaged.  *See Rexrnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994).  As Hay has not adequately alleged[1][2] the existence of a contract, the Complaint must be dismissed.

### A.    *Hay Has Failed to Allege the Existence of a Contract*

"It is a basic tenet of contract law that, in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'"  *Starke v. SquareTrade, Inc*., 913 F.3d 279, 288-89 (2d Cir. 2019) (citation omitted).  Hay has not met this requirement as the Complaint alleges Hay and Bolonik never shared a common understanding and intent to be bound: "[Bolonik] had never intended to comply with her agreement with [Hay,] had never intended to take him on as a co-author, or give him any input into the manuscript, or to share any of the money that the book earned or to comply with any of the other terms (para. 23 . . .) of their agreement."  (Ex. A ¶ 33; *see also id*. ¶¶ 34, 36-38, 61-62, 68.)  In the absence of a meeting of the minds, there is no contract.  *See Opals on Ice Lingerie v. Bodylines Inc*., 320 F.3d 362, 371-72 (2d Cir. 2003)

As a result, the Court should dismiss the Complaint.

### B.    *Hay Has Not Satisfied the Statute of Frauds*

The Complaint must also be dismissed because it lacks allegations sufficient to satisfy the statute of frauds, which requires that any oral contract that "[b]y its terms is not to be performed within one year from the making thereof . . ." is void "unless it or some note or memorandum thereof be in writing, and subscribed to by the party to be charged therewith . . . ." N.Y. Gen. Oblig. Law § 5-701(a)(1) (2024).  The contract Hay attempts to allege in the Complaint is subject to this requirement because it is of indefinite duration.  (Ex. A ¶¶ 20, 23.)  Thus, absent a

writing subscribed to by Bolonik, it is barred by the statute of frauds.  *See D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 457-58, 483 N.Y.S.2d 164, 167-68 (1984).

Hay tries to avoid this issue by claiming that he and Bolonik "settled on the terms of their agreement . . ." in a "series of phone calls and **exchanges of correspondence** . . . ."  (Ex. A ¶ 23 (emphasis added).)  However, the Complaint does not provide any details of such correspondence or, indeed, any information to support the existence of written documents memorializing this supposed agreement.  (*See*, *generally*, Ex. A.)  Nor does the Complaint allege, as it must, that Bolonik "subscribed . . ." to any written document.  N.Y. Gen. Oblig. Law § 5-701(a) (2024).

These omissions are fatal and, as a result, the Complaint should be dismissed.  *See Monsour v. New York State Office for People with Developmental Disabilities*, 2014 WL 12891206, 12 Civ. 336, at *6 (S.D.N.Y March 12, 2014) (dismissing breach of contract claim where "Plaintiff has alleged no facts suggesting that there was mutual assent or intent to be bound . . ."); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief") (internal quotations marks; citation omitted).

### C.    The "Contract" Alleged in the Complaint is Too Vague to be Enforced

In addition, as this Court previously held in the NY Media Action, "for a contract to be enforced, it must be sufficiently definite and explicit so [that the parties'] intentions may be ascertained to a reasonable degree of certainty.'"  (Ex. D at 5 *quoting Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 587 (2d Cir. 1987) (alteration supplied; internal quotation marks omitted).)  As a result, there is no enforceable agreement "[i]f the terms of the agreement are so vague and indefinite that there is no basis or standard for deciding whether the

agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain. . . ." (*Id.* quoting *Best Brands Beverage, Inc.*, 842 F.2d at 588.)

The contract alleged in the Complaint does not meet these requirements.  For example, it alleges that the parties agreed that "the book would be a serious work of investigative journalism . . ." and "if a movie or TV deal materialized, [Hay] and [Bolonik] would insist to its creators that the production was based on fact, did not fabricate stories, and did not contain invidious stereotypes." (Ex. A ¶ 23.)  It further alleges Hay and Bolonik "would ensure that the book met the highest journalistic standards . . . and would act to ensure that any movie or television production involving them would be fact-based and free of invidious stereotypes." (*Id.* ¶ 67.)  However, as this Court previously found "[g]iven the subjective nature of such determinations, such promises provide the Court 'no basis or standard for deciding whether the agreement has been kept or broken.'" (Ex. D at 5 *quoting Best Brands Beverage, Inc.*, 842 F.2d at 578.)

For the foregoing reasons, Hay has not alleged the existence of an enforceable contract and, as a result, the Complaint must be dismissed.

## III.   THE COURT SHOULD ENJOIN HAY FROM FILING ADDITIONAL LITIGATION

In addition to dismissing the Complaint in this action, Bolonik respectfully requests that the Court exercise its authority under 28 U.S.C. § 1651 to permanently enjoin and restrain Hay from commencing any additional actions or proceedings based on or connected to the facts alleged in the Complaint, or any of the complaints, amended complaints, proposed amended complaints or other documents he has filed in this case, the NY Media Action or the Gernert Action without first obtaining leave of this Court, except to submit papers responding to submissions by a defendant or, when appropriate, to seek appellate review.

"A district court not only may but should protect its ability to carry out its constitutional functions against the threats of onerous, multiplicitous, and baseless litigation." *Safir v. U.S. Lines, Inc.,* 792 F.2d 19, 24 (2d Cir. 1986) (citation omitted).  In determining whether to grant such relief, the Court should consider: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.  Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*  These criteria are met here.

Hay has now filed three actions in the Southern District of New York.  In these actions, he has filed a total of seven complaints, amended complaints and proposed amended complaints. He filed the present case, which he claims is not barred by res judicata (Ex. I), even though the Court in the Gernert Action specifically found that his proposed claim against Bolonik – which he again seeks to allege in the Complaint – was barred by res judicata. (Ex. H, at 1 (rejecting Hay's argument that the claim he seeks to assert in the present action was not barred by res judicata).)  Moreover, the Complaint here contains the same vague and subjective contractual standards this Court previously found inadequate.  (Ex. D at 5.)

As such, Hay has engaged in vexatious and duplicative litigation where he cannot have a good faith expectation of success.  Moreover, to date, dismissals have not hindered Hay from initiating additional litigation that simply attempts to repackage his prior allegations.  In such

18

situations, injunctive relief is appropriate.  *See Safir*, 792 F.2d at 25; *Lipin v. National Union Fire Ins. Co. of Pittsburgh, PA*, 202 F. Supp. 2d 126, 142 (S.D.N.Y. 2002).  Given this history, an injunction is more than warranted.  *See Baker v. City of New York*, 2005 WL 1018193, 05 Civ. 664, at *2 (S.D.N.Y. Mar. 9, 2005) (finding that sanctions other than an injunction "would not offer the defendants or the courts adequate protection from further duplicative filings by plaintiff").[4]

Hay's status as a pro se litigant does not shield him from injunctive relief, particularly as he attended law school and previously taught at Harvard Law School.  Moreover, nothing in Hay's pro se status has hampered his ability to bring lawsuits on his own behalf.  Indeed, if anything, his lack of representation has led to litigation that an attorney would not have filed.

In light of the foregoing, this Court should permanently enjoin Hay from commencing any additional actions or proceedings based on or connected to the facts alleged in the Complaint or any of the complaints, proposed amended complaints or other documents he has filed in this case, the NY Media Action or the Gernert Action without first obtaining leave of this Court, except to submit papers responding to submissions by a defendant or, when appropriate, to seek appellate review.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Complaint and permanently enjoin Hay from commencing any additional actions or proceedings based on or connected to the facts alleged in the Complaint or in any of the complaints, proposed amended complaints or other documents he has filed in this case, the NY Media Action or the Gernert Action without

---

[4]     In addition, such repetitive litigation is plainly a burden on Bolonik – a freelance writer – who has had to engage and pay counsel despite the fact that two courts have previously rejected Hay's purported claims against her. (Declaration of Kera Bolonik dated February 16, 2024 ¶ 4.)

first obtaining leave of this Court, except to submit papers responding to submissions by a

defendant, or when appropriate, to seek appellate review.

Dated: Brooklyn, New York
       February 21, 2024

POLER LEGAL LLC


By:___/S/_____
          Emily A. Poler

15 MetroTech Center, 7th Floor
Brooklyn, NY 10005
(212) 675-9060
emily@polerlegal.com

*Attorneys for Defendant Kera Bolonik*

20